IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

JOAN BESTPITCH and
DAWN SPADER,

    Plaintiffs,

v.

MILDRED L. WILTBANK,

    Defendant.

C.A. No. S19C-08-005 RFS

FILED PROTHONOTARY
SUSSEX COUNTY
2020 APR 27 P 1:33

**ORDER**

Submitted: 2/17/2020

Decided: 4/27/2020

Scott E. Chambers, Esq., 414 S. State Street, P.O. Box 497, Dover, DE 19901, Attorney for Plaintiffs.

Mildred L. Wiltbank, 28 South Shore Drive, Bethany Beach, DE 19930, *Pro Se* Defendant.

**INTRODUCTION**

Pending before the Court in this ejectment action is a motion for summary judgment which plaintiffs Joan Bestpitch and Dawn Spader ("plaintiffs") have filed. Because defendant Mildred L. Wiltbank ("defendant" or "Mildred") has submitted documents that establish material issues of fact exist and that require further inquiry into the facts, the motion is

1

DENIED.[1]

The question in this case is whether defendant is a tenant of Lot 65 in Simpson's Mobile Home Park ("the property"). Defendant represents herself in this litigation. Accordingly, the Court does not require her to phrase her responses and arguments in technical terms before it considers an argument. In particular, although she does not assert the term "tenancy by estoppel" the Court applies that term to the argument she advances.

## FACTS

The Court reviews the factual scenario below. While defendant's documents are not before the Court by way of an affidavit or discovery responses, they appear genuine and are considered in this motion. Their existence are what leads this Court to conclude that a further exploration of them in a trial setting is appropriate.

The pertinent characters in this case are Alfred S. Wiltbank ("Alfred"), Mildred, and Joseph H. Simpson ("Simpson"). Simpson, or an entity that he controlled, owned a parcel of land located on the south side of the Indian River Inlet. The parcel was subdivided into various residential lots and was known as Simpson's Mobile Home Park. Alfred and Mildred were husband and wife. They both, and then Mildred alone, lived on Lot 65 for decades. Simpson managed the property until his death in 2014. He signed all of the documents at issue.

In March, 1985, Simpson signed a lease for the property with Elener G. Culin and Robert G. Culin, Sr. Elener G. Culin was Alfred's sister. Alfred also signed this lease as a lessee. Although Alfred signed the lease, the lease does not list Alfred as a party in the first paragraph.

---

[1] *Ebersole v. Lowengrub*, Del. Supr., 180 A.2d 467, 470 (1962).

At some point, Alfred became the sole lessee.

In an undated letter from Alfred to Simpson, Alfred wrote:

Hello, Joe, hope you are having a good winter down there in Florida. I have received your letter stating that you are willing to extend my original lease, from an additional (10) years to the additional lifetime lease.

I am notifying you as the tenant of this property that I request that you change the additional (10) year lease to include a lifetime lease for my wife and myself.

Thank you, very much for the offer and I will be waiting to finalize the new lease with you.

In a letter dated December 21, 2002, Alfred sent Simpson the following letter:

Enclosed you will find the Tenant's Letter of Intent (signed, dated and notarized), the Landlord's Letter of Intent along with the 2003 rent check for $1,194.00.

I have also notice [sic] that you addressed the envelope "Albert" Wiltbank. My correct name is "Alfred". That is why I go by the name "Bud". Very good reason, Right! Also I have included my wife's name "Mildred L. Wiltbank" on all the documents. Would you please to [sic] the same; after all we have been together now for twenty years. ***

Now, I want to thank-you for the opportunity for my wife and I to live out our lives in the home we love so very much.

The "Tenant's Letter of Intent" specifies as follows:

I/We Alfred S. Wiltbank/Mildred L. Wiltbank[2] hereby affirm that I/We intend to live up to the terms set forth in the original Agreement to be a part of the Association regarding road maintenance and to meet all my/our financial obligations i.e. pay my/our share of the sewer installation, pay any tax I/we may be subject to, and in return I/we will require my/our Lease to be extended for another ten (10) years, plus, in addition, the number of years it will take to live out our natural lives on said property. (Footnote added).

---

[2]Specifically, Mildred's name is on the line itself and Alfred's is above Mildred's; thus, Mildred's name could not have been added at a later point. I make this point in light of plaintiff's implication at paragraph 9 of its summary judgment motion that defendant might have added her name at a later time to another document.

3

This Tenant's Letter of Intent was dated December 21, 2002. It is signed by both Alfred and Mildred as Tenants. They each signed on their own line above the typed line labeled, "Tenant".

Defendant also has submitted a copy of a cashier's check dated December 23, 2002, in the amount of $1,194.00 made out to "Joseph H. Simpson" and showing "Alfred and Mildred L. Wiltbank" as the remitters.

Defendant includes in her filings a certified tracking form which indicates Simpson signed for something from Alfred and Mildred on December 30, 2002.

Defendant further has submitted a document dated in January, 2003[3] and signed by Simpson which is captioned, "Landlord's Letter of Intent". In that document, it is provided:

> I, JOSEPH H. SIMPSON, hereby grants the extended ten years, plus the additional number of years required for the tenant(s) to live out their natural lives on lot 65 and cannot be nil and void by anyone except themselves for failure to live up to the full terms of their Lease.

Finally, defendant submits an envelope with a postmark of January, 2003, from Simpson and addressed to "Alfred and Mildred Wiltbank".

This information, to this point, supports defendant's claim that Simpson recognized her as a tenant for life on the property.

In November, 2005, Alfred and Mildred undertook steps connected with installing a sewer hookup. Mildred's submissions also show that the home became affixed to the lot by way of a permanent foundation. If Mildred helped pay for the hookup as well as pay for other

---

[3]The day is not legible.

improvements to the property, then she may establish detrimental reliance on her and Alfred's understanding that Simpson considered Mildred to be a tenant.

On January 3, 2006, Simpson signed an Amended Landlord's Letter of Intent, which stated:

> I, **JOSEPH H. SIMPSON**, hereby grants the extended ten years, plus the additional number of years required for the tenant(s) to live out their natural lives on Lot(s) 61, 65, 73, 79, 81, and 83 and cannot be nil and void by anyone except themselves for failure to live up to the full terms of their Lease or vacating the premises after the ten years for whatever reason for doing same.

An "Addendum to Lease", dated September 24, 2006, was signed by Simpson, and Alfred and Mildred. The signature line has only Alfred's name typed as Lessee.[4] However, Mildred's signature is underneath. This document provided in pertinent part:

> **THIS ADDENDUM AMENDS THE LEASE** made and entered into, between Joseph H. Simpson, owner of Simpson's Mobile Home Park, f/k/a Rockturn, Inc., hereinafter referred to as "Lessor" and ALBERT [stricken through] ALFRED [written above ALBERT] WILTBANK., hereinafter referred to as "Lessee."
> 24. Lessee shall have the option to extend his Lease for as long as the property is required to maintain a home, with the stipulation that he occupies the residence fulltime.
> 25. Lessee shall have the same privileges and rights as afforded those Lessees holding a 99-year Lease in any Homeowners' Association formed, to wit: 1) the right to vote; 2) the right to hold office; and 3) the right to participate fully as a member of any Homeowners Association formed.

The 2007 lot rent paid to Simpson was from Alfred and Mildred.

Simpson signed a document stating:

> Rent paid from Bud and Millie Wiltbank on **Oct. 08, 2008** for the ground rent for the year 2009 to Joe Simpson. Amount paid $1,329.00. (Emphasis added).

In October, 2013, the three parties signed a document which provided as follows:

---

[4]Alfred's name again is incorrectly typed as "ALBERT WILTBANK" but Alfred signed his name.

5

Lot 65 - 28 So. Shore Dr. Ext. Bethany Beach, DE 19930 rent in the amount of $1,600.00 for the year 2014 was paid to Joseph Simpson on _____.
Alfred will continue maintaining cutting Joseph Simpson's personal lots as agreed upon.

A signed copy went to Joseph Simpson and a signed copy went to Alfred Wiltbank/Mildred Wiltbank.

Alfred S. Wiltbank/Mildred L. Wiltbank
Alfred S. Wiltbank /s/
Mildred L. Wiltbank /s/                          DATE: 10/19/2013

Joseph Simpson
Joseph H. Simpson /s/                            DATE: 10-24-13

Simpson addressed an envelope to "Mr. + Mrs. Albert Wiltbank" on an envelope

postmarked in 2013.[5]

Alfred died on October 6, 2014.

At some point, John Kerr ("Kerr"), Simpson's grandson, began handling Simpson's

business. In a document signed by Kerr and Mildred, the following is provided:

Lot 65 - 28 So. Shore Dr. Ext. Bethany Beach De. 19930 rent for 2015 for the amount of $1,600.00 was paid to John Kerr on Saturday, January 24, 2015. Mildred Wiltbank will continue maintaining cutting the lots own [sic] by the Simpson Land Holdings, LLC. For a discount in her yearly rent.
A signed copy went to John Kerr and a signed copy went to Mildred Wiltbank

Mildred Wiltbank

Mildred Wiltbank /s/                             DATED: 10/25/15

John Kerr

---

[5] The month is unclear.

<u>John Kerr /s/</u>                                    DATED: <u>1/25/15</u>

In a January 10, 2016 email to Mildred, Kerr notified her as follows: "Your 2016 lot lease is due again with no increases in payments. I would like to continue with the mowing services for this year, if that's ok?"

Mildred paid the Joseph H. Simpson RVOC TR its yearly rent in 2016, also, and she agreed to maintain the personal lots to include cutting. Defendant has submitted a copy of the check paying that rent for the year to Joseph H. Simpson RVOC TR.

In September, 2017, the Joseph H. Simpson Revocable Trust assigned its interests in Lot 65 to plaintiffs. Kerr notified Mildred that "From now on the lease payment will be made to them."

Mildred sent a check in the amount of $1,900.00 made out to Joan Bestpitch for her 2018 lot rent.


**DISCUSSION**

Summary judgment may be granted only when no material issues of fact exist, and the moving party bears the burden of establishing the non-existence of material issues of fact.[6] Once the moving party meets its burden, then the burden shifts to the non-moving party to establish the existence of material issues of fact.[7] Where the moving party produces an affidavit or other evidence sufficient under Superior Court Civil Rule 56 in support of its motion and the burden shifts, then the non-moving party may not rest on its own pleadings, but must provide evidence

---

[6]*Moore v. Sizemore*, Del. Supr., 405 A.2d 679, 680 (1979).

[7]*Id.* at 681.

7

showing a genuine issue of material fact for trial.[8] If, after discovery, the non-moving party cannot make a sufficient showing of the existence of an essential element of his or her case, then summary judgment must be granted.[9] If however, material issues of fact exist or if the Court determines that it does not have sufficient facts to enable it to apply the law to the facts before it, then summary judgment is inappropriate.[10]

The paperwork from 2002/2003 supports an argument that defendant became a tenant for life.

Alternatively, the facts support an estoppel argument. Defendant was under the expectation that she would be able to remain on the lot for her natural life. The home cannot be moved due to improvements made, leading to a permanent foundation. Defendant has made multiple rent payments via checks displaying her name. These checks were accepted. Defendant also has provided multiple envelopes from Simpson where the addressees are herself and Alfred. After Alfred died in 2014, Mildred continued to occupy the land and meet the tenant obligations without objection. Until the current action was filed in 2019, defendant was treated as the tenant of Lot 65.

As the above shows, there is a basis for further review as to whether Mildred actually became a tenant in 2002/2003 and in the alternative, there is a basis for further review as to whether plaintiffs, as Simpson's successors in interest, may be estopped from denying the

---

[8]Super. Ct. Civ. R. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

[9]*Burkhart v. Davies*, Del. Supr., 602 A.2d 56, 59 (1991), *cert. den.*, 112 S. Ct. 1946 (1992); *Celotex Corp. v. Catrett, supra.*

[10]*Ebersole v. Lowengrub, supra.*

8

existence of a landlord-tenant relationship between Mildred and Simpson and his successors in interest.[11] Although Defendant did not mention "estoppel," that is not fatal to her defense. Defendant is *pro se* and has effectively advanced the defense.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for summary judgment is DENIED.

**IT IS SO ORDERED.**

                                                      JUDGE

cc: Prothonotary's Office

---

[11]*Delaware Nat. Guard Club, Inc. v. State, Dept. Of Military Affairs*, 1989 WL 106555, *2 (Del. Ch. Sept. 11, 1989).

9